1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION

10

11  MARK ANTHONY CLEARMAN,              )        Case No. CV 05-5633 AG (JWJ)
                                        )
12              Plaintiff,              )
                                        )        **ORDER DENYING**
13      vs.                             )        **DEFENDANTS' MOTION**
                                        )        **TO DISMISS AND**
14  EILEEN M. FERNANDO,                 )        **ORDERING ANSWER**
    STERLING POLLOCK,                   )        **TO COMPLAINT**
15                                      )
                                        )
16              Defendants.             )
                                        )
17  _____

18

19          Defendants Ellen M. Fernando and Dr. Sterling Pollock (collectively

20  "Defendants") have filed a Motion to Dismiss Plaintiff Mark Anthony Clearman's

21  Second Amended Complaint.  For the reasons discussed below, Defendants'

22  Motion to Dismiss is denied, and Defendants shall file an Answer to Plaintiff's

23  Second Amended Complaint.

24

25          ## I.  BACKGROUND and PROCEDURAL HISTORY

26  **A.      Filing, Dismissal of Complaint and First Amended Complaint.**

27          On August 5, 2005, Plaintiff Mark Anthony Clearman ("Plaintiff"), a

28  federal prisoner incarcerated at the United States penitentiary in Victorville,

1    California and proceeding <u>pro se</u> and <u>in forma pauperis</u> in this action, filed a

2    "Civil Rights Complaint Pursuant to <u>Bivens v. Six Unknown Agents</u>, 403 U.S. 388

3    (1971)."  Plaintiff alleged that defendants violated Plaintiff's constitutional rights

4    by failing to provide adequate medical care for his injured shoulder.  (Complaint,

5    p. 5.)  On January 20, 2006, the named defendants moved to dismiss the

6    Complaint; on September 28, 2006, the Complaint was dismissed with prejudice

7    as to all defendants in their official capacities and with leave to amend as to the

8    defendants in their individual capacities.  The Court explained, <u>inter alia</u>, that

9    Plaintiff's allegation that prison medical staff failed to timely diagnose his

10   shoulder injury, resulting in a delay in shoulder surgery, did not rise to the level of

11   "deliberate indifference" necessary to state an Eighth Amendment claim.  (9/28/06

12   Memorandum and Order, p. 12.)

13          On October 23, 2006, Plaintiff filed a First Amended Complaint ("FAC"),

14   again claiming these things:  defendant Ellen M. Fernando ("Fernando"), allegedly

15   a "medical practicing assistant," failed to follow customary diagnostic procedures

16   to determine the extent of Plaintiff's shoulder injury; and defendant Dr. Sterling

17   Pollock ("Dr. Pollock") would receive updates on Plaintiff's case but refused to

18   order the "next step in diagnostic treatment" – which Plaintiff alleged was an

19   "MRI x-ray" – to determine the extent of Plaintiff's injury.  (FAC, Attachment,

20   pp. 2-3.)  Plaintiff also alleged that certain other un-named "medical practicing

21   assistants" reviewed his medical record and that they also failed to order the "next

22   diagnostic step."  (<u>Id.</u> at p. 4.)

23          On December 4, 2006, the defendants filed a "Motion to Dismiss First

24   Amended Complaint."  In a July 27, 2007 Order ("7/27/07 Order"), this Court

25   granted that Motion to Dismiss, dismissing Plaintiff's First Amended Complaint

26   with leave to amend.  This Court reiterated that Plaintiff's First Amended

27   Complaint continued to allege facts that demonstrated nothing more than mere

28   negligence on the part of the defendants.  (<u>See</u> 7/27/07 Order, p. 7.)

-2-

1  **B.      Second Amended Complaint, Defendants' Motion to Dismiss.**

2       1.      <u>Allegations in Plaintiff's Second Amended Complaint.</u>

3       On September 6, 2007, Plaintiff filed a "Second Amended Civil Rights

4  Complaint Pursuant to <u>Bivens v. Six Unknown Agents</u> [etc.]" ("Second Amended

5  Complaint" or "SAC"), together with a document entitled "Attachment" and

6  exhibits consisting of several medical records in support of the Second Amended

7  Complaint.  Plaintiff has also filed a "Response to Defendant's Motion to

8  Dismiss" ("Response").

9       The Second Amended Complaint again names "Ms. Fernando" and

10  "Dr. Pollock, et al." as defendants (hereinafter collectively "Defendants").

11  (SAC pp. 1, 3.)

12       Plaintiff alleges that, sometime before November 2001, he hurt himself

13  while exercising in prison, trying to lift a 300-pound weight, and that he advised

14  Defendants that something was "torn" or "severely damaged" in his shoulder.

15  (<u>See</u> Attachment pp. 10, 14.)  Plaintiff alleges that his injury was serious because

16  it affected his daily functioning ability, and diminished his capacity to defend

17  himself in the event of an "assault situation."  (<u>See</u> SAC p. 1, Attachment p. 12.)

18       Plaintiff alleges that his injured shoulder was first examined by defendant

19  Fernando in November 2001.  (<u>See</u> Attachment, p. 2.)  Plaintiff claims that after

20  30 days of treatment with anti-inflammatory pain medication, his pain had

21  worsened.  (<u>Id.</u>)  Plaintiff claims that after another 30 days of treatment his pain

22  was still worse.  (<u>Id.</u>)  Plaintiff claims that he requested an "MRI x-ray."  (<u>Id.</u>)

23  Plaintiff claims that when he requested the MRI from defendant Fernando, she

24  replied "You will wait until I feel like ordering the test."  (Attachment, p. 5.)

25  Plaintiff alleges that Fernando then wanted to prescribe more anti-inflammatory

26  medication in place of ordering the MRI, but Plaintiff explained to Fernando that

27  the medication "was causing [him] stomach problems, and doing nothing for the

28  pain or condition."  (<u>Id.</u>; bracketed material added.)  Plaintiff alleges that

1   Fernando responded "That's all you are getting, I am not going to do anything

2   else, and if you don't like it, too bad, go and consult with someone else." (Id.)

3       Approximately 3 weeks later, Plaintiff again approached Fernando and told

4   her he was still undergoing persistent shoulder pain.  (Id.)  Plaintiff alleges that

5   Fernando said:  "Didn't I tell you already I am not doing any more for you?"

6   (Attachment p. 6.)  Plaintiff alleges that in 2002 he also asked Fernando for

7   "some pain pills for his shoulder," but she responded:  "I have already told you I

8   don't [want] to hear anymore about your dam [sic] shoulder." (Attachment p. 6;

9   bracketed material added.)

10      Plaintiff claims that "[d]uring the following 17 months Plaintiff was

11  examined by three different Medical Practicing Assistants, each one [reviewed] the

12  previous treatment in the medical file, [and] each one ignored the next step in

13  diagnoses training [sic] to order the MRI x-ray." (Attachment p. 6.)

14      Plaintiff also claims that he spoke with defendant Dr. Pollock several times

15  about his "painful shoulder injury." (Attachment p. 7.)  On one occasion, Plaintiff

16  claims that he approached Pollock "about the lack of progress in diagnosing the

17  painful shoulder injury," but Pollock allegedly told him "I have spoke [sic] to

18  Fernando, I already know about your complaints, you need an attitude

19  adjustment, and to learn to do as the Practicing Assistant instructs."  (Id.)

20  Plaintiff claims that he approached Pollock again after this conversation, in the

21  cafeteria at the noon meal, but Pollock "abruptly cut Plaintiff off" and told him

22  "[y]our problem is not a priority with me." (Attachment pp. 7-8.)  Plaintiff claims

23  that he "walked away in fear that if [Plaintiff] tried to continue the conversation,

24  Pollock would have put [Plaintiff] in the Hole – Disciplinary Segregation."

25  (Attachment p. 8; bracketed material added.)

26      Plaintiff claims that "[b]y this time a year had passed, and Plaintiff was still

27  not diagnosed, and still in constant pain." (Attachment p. 8.)  Plaintiff claims

28  that it was obvious to him he was not going to get any help from Fernando or

-4-

1  Pollock, so he spoke to other prison personnel, including the warden and hospital

2  administrators, about his shoulder.  (Attachment p. 8.)  Plaintiff claims that after

3  these complaints he was eventually ordered to report to the hospital.  (<u>Id.</u>)

4  Plaintiff claims that he was examined there by Pollock and two other unfamiliar

5  men.  (<u>Id.</u>)  One of the strangers told Plaintiff that they had decided to inject a

6  pain killer deep into Plaintiff's shoulder.  (<u>Id.</u>)  Plaintiff says that Pollock then

7  told him "[y]ou need to stop fronting me off running around the institution telling

8  staff I don't do my job," and then Pollock left the room.  (<u>Id.</u>)  Plaintiff states that

9  one of the two men then administered four shots of painkiller into Plaintiff's

10  shoulder.  (Attachment p. 9.) [1]

11       Plaintiff states that his shoulder injury was finally diagnosed and the

12  requested MRI was finally taken in May 2003, approximately 17 months after his

13  initial examination.  (<u>See</u> Attachment, pp. 3, 10.)  The MRI revealed a partial tear

14  of the right rotator cuff.  (<u>See</u> Attachment p. 14.)  Shoulder surgery was

15  recommended:  arthoscopic shoulder surgery was performed on November 5,

16  2003, two years after Plaintiff's initial examination with Fernando.  (<u>See</u>

17  Attachment pp. 6, 10, 14.)  Plaintiff alleges that after the operation Fernando said

18  to him: "[H]ow was I suppose[d] to know you were telling the truth!"

19  (Attachment pp. 6-7.)

20       Plaintiff states that he seeks "$100,000 jointly and severally against

21  defendants Fernando and Pollock for failure to provide adequate medical care,"

22  another $100,000 "jointly and severally for medical neglect and callous medical

23  ///

24  ///

25

26  ――――――――――――

27       [1]  A record attached to the Second Amended Complaint states that Plaintiff received a steroid injection resulting in one to two months of temporary

28  improvement.  (Attachment, p. 14.)

1 | ///

2 | care rendered," $50,000 for "mental anguish and emotional injury," and $25,000

3 | in "punitive damages" for each defendant.  (Attachment pp. 11-12.) [2]

4

5 | ### III.  STANDARD OF REVIEW

6 | **A.      Rule 12(b)(6) Motion to Dismiss <u>Bivens</u> Complaint.**

7 | Plaintiff has sued under <u>Bivens v. Six Unknown Federal Narcotics Agents</u>,

8 | 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) ("<u>Bivens</u>").  To state a

9 | <u>Bivens</u> claim, a plaintiff must allege that persons acting under color of federal law

10 | violated plaintiff's constitutional rights.  <u>Martin v. Sias</u>, 88 F.3d 774, 775 (9th

11 | Cir. 1996).  Thus, an action under <u>Bivens</u> is identical to one brought pursuant to

12 | 42 U.S.C. § 1983 except for the replacement of a state actor under § 1983 by a

13 | federal actor under <u>Bivens</u>.  <u>Id.</u> (citation omitted).  To state a valid constitutional

14 | claim, a plaintiff must allege that he suffered a specific injury as a result of the

15 | conduct of a particular defendant; he must allege an affirmative link between the

16 | _____

17 | [2]  Plaintiff also raises vague and conclusory allegations of a "painful foot
problem, a bunion on the lower joint of greater toe causing pressure on a nerve,

18 | poor circulation, and the toe to overlap the second toe."  (Attachment p. 9.)

19 | Plaintiff alleges that "[t]he Orthopedic Surgeon utilized by Lompoc examined the
foot and recommended surgery to correct the condition, two days afterwards the

20 | surgery recommendation was denied by Pollock, he considered the surgery for

21 | Plaintiff cosmetic and not an important need."  (Attachment p. 9.)  A record
dated January 8, 2004 indicates that Plaintiff was seen for a "right foot bunion

22 | with pain / deformity."  (Attachment p. 17.)  On March 9, 2004, Plaintiff was

23 | authorized for "wide box shoes," assumedly to help with his bunion condition.
(Attachment p. 19.)  It is unclear if Plaintiff intends to raise a separate claim for

24 | relief by these allegations; but, in any event, since these allegations are vague and

25 | conclusory, the Court finds that these allegations fail to state facts sufficient to

26 | support a claim for relief.   <u>See</u> <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th

27 | Cir. 1982) (vague and conclusory allegations of civil rights violations are
insufficient to state a claim).

28

1     injury and the conduct of that defendant.  See Rizzo v. Goode, 423 U.S. 362,

2     371-72, 377, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976).  Vague and conclusory

3     allegations of participation in civil rights violations are insufficient.  Ivey v. Board

4     of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

5        A trial court may dismiss a claim upon motion of the defendant or sua

6     sponte pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") Rule

7     12(b)(6) for "failure to state a claim upon which relief can be granted."  See Wong

8     v. Bell, 642 F.2d 359, 361-62 (9th Cir. 1981).  A complaint can be dismissed for

9     failure to state a claim upon which relief may be granted if it appears beyond

10    doubt that plaintiff can prove no set of facts in support of the claim or claims that

11    would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73, 104

12    S. Ct. 2229, 81 L. Ed. 2d 59 (1984).

13       In considering a motion to dismiss for failure to state a claim under Fed. R.

14    Civ. P.  12(b)(6), the court must accept as true all material allegations in the

15    complaint, as well as all reasonable inferences which may be drawn from such

16    allegations.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  The

17    allegations in the complaint must also be construed in the light most favorable to

18    plaintiff.  Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir.

19    1995).  The "court is not required to accept legal conclusions cast in the form of

20    factual allegations that cannot reasonably be drawn from the facts alleged." Clegg

21    v. Cult Awareness Network, et al., 18 F.3d 752, 754 (9th Cir. 1994) (citations

22    omitted).  However, if the motion is to be granted, it must appear to a certainty

23    that the plaintiff will not be entitled to relief under any set of facts that could be

24    proven under the allegations of the complaint.  Symington, 51 F.3d at 1484.

25       Review of a complaint for failure to state a claim is generally limited to the

26    contents of the complaint.  See Buckey v. City of Los Angeles, 968 F.2d 791, 794

27    (9th Cir. 1992).  The complaint may be dismissed where it discloses some fact that

28    will necessarily defeat the claim.  Franklin v. Murphy, 745 F.2d 1221, 1228-29

1   (9th Cir. 1984).  In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a

2   court may also consider exhibits attached to the complaint, matters subject to

3   judicial notice, or documents necessarily relied on by the complaint whose

4   authenticity no party questions.  See Swartz v. KPMG LLP, 476 F.3d 756, 763

5   (9th Cir. 2007); Lee v. City of Los Angeles, 250 F.3d 668, 688-689 (9th Cir.

6   2001).

7         The most recent amended complaint of record on file in an action

8   supersedes the original complaint and all prior amended complaints.  See Ferdik v.

9   Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992) (citation omitted).  Since the

10  original pleading is superseded by an amended pleading and no longer performs

11  any function, claims raised in earlier complaints are not cognizable, and

12  defendants not named in an amended complaint are no longer considered

13  defendants.  See Ferdik, 963 F.2d at 1262.  These rules govern actions filed by pro

14  se litigants as well as litigants represented by counsel.  See King v. Atiyeh, 814

15  F.2d 565, 567 (9th Cir. 1987).

16        In a pro se civil rights case, the complaint must be construed liberally to

17  afford the plaintiff the benefit of any doubt.  Karim-Panahi v. Los Angeles Police

18  Department, 839 F.2d 621, 623 (9th Cir. 1988).  Before dismissing a pro se civil

19  rights complaint for failure to state a claim, the plaintiff should be given a

20  statement of the complaint's deficiencies and an opportunity to cure.  Id.  Only if

21  it is absolutely clear that the deficiencies cannot be cured by amendment should

22  the complaint be dismissed without leave to amend.  Id.; see also Cato v. United

23  States, 70 F.3d 1103, 1106 (9th Cir. 1995).

24  **B.     Claims of Deliberate Indifference to Serious Medical Needs.**

25        The treatment a prisoner receives in prison and the conditions under which

26  the prisoner is confined are subject to scrutiny under the Eighth Amendment.

27  Helling v. McKinney, 509 U.S. 25, 31, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993).

28  Prison officials must provide prisoners with adequate "food, clothing, shelter,

1    sanitation, medical care and personal safety." <u>Toussaint v. McCarthy</u>, 801 F.2d

2    1080, 1107 (9th Cir. 1986).  The state must provide medical care to prisoners and

3    detainees because their confinement has deprived them of the ability to secure

4    medical care for themselves.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04, 97 S. Ct.

5    285, 50 L. Ed. 2d 251 (1976).  "[T]o maintain an Eighth Amendment claim based

6    on prison medical treatment, an inmate must show 'deliberate indifference to

7    serious medical needs'."  <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006)

8    (quoting <u>Estelle</u>, 429 U.S. at 104).

9         The test for deliberate indifference consists of two parts.  <u>McGuckin v.</u>

10   <u>Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992) (<u>overruled on other grounds by</u>

11   <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997)).  First, there must be

12   a serious medical need which could lead to further injury or "unnecessary and

13   wanton infliction of pain."  <u>Jett</u>, 439 F.3d at 1096 (internal citations and

14   quotations marks omitted).  Indications of a serious medical need include "the

15   presence of a medical condition that significantly affects an individual's daily

16   activities."  <u>McGuckin</u>, 974 F.2d at 1059-60.  Second, the plaintiff must show

17   that prison officials responded to the plaintiff's serious medical need with

18   "deliberate indifference."  <u>Jett</u>, 439 F.3d at 1096.  The test for deliberate

19   indifference is two-pronged:  "[1] a purposeful act or failure to respond to a

20   prisoner's pain or possible medical need and [2] harm caused by the indifference."

21   <u>Id.</u> (bracketed material added; internal citations omitted).  Prison officials

22   demonstrate deliberate indifference when they are aware of a prisoner's condition

23   but "deny, delay, or intentionally interfere with medical treatment."  <u>Id.</u>  (internal

24   citations omitted).

25        Deliberate indifference is a state of mind more blameworthy than negligence

26   and requires more than ordinary lack of due care for the prisoner's interests or

27   safety.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L. Ed. 2d

28   811 (1994).  A prison official is deliberately indifferent only if he knows that a

1  prisoner faces a substantial risk of serious harm and disregards that risk by failing
2  to take reasonable steps to abate it.  <u>Farmer</u>, 511 U.S. at 837.  Mere indifference,
3  negligence, or medical malpractice are insufficient to show deliberate indifference.
4  <u>See</u> <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980) (<u>citing</u>
5  <u>Estelle</u>, 429 U.S. at 105-06).

6          Delay in providing medical care may manifest deliberate indifference.
7  <u>Estelle</u>, 429 U.S. at 104-105.  However, mere delay in medical treatment, without
8  more, is insufficient to state a claim of deliberate indifference.  <u>See</u> <u>Shapley v.</u>
9  <u>Nevada Bd. of State Prison Comm'rs</u>., 766 F.2d 404, 407 (9th Cir. 1985) (per
10 curiam).  To establish a claim of deliberate indifference arising from delay, a
11 plaintiff must show that the delay caused further harm.  <u>Wood v. Housewright</u>,
12 900 F.2d 1332, 1335 (9th Cir. 1990).  "Harm" may include significant pain that
13 otherwise need not have been endured, even without physiological damage.  <u>See</u>
14 <u>Shapley</u>, 766 F.2d at 407.

15         A finding that an inmate was seriously harmed by the defendant's action or
16 inaction tends to provide additional support for a claim of deliberate indifference;
17 however, it does not end the inquiry.  <u>See</u> <u>McGuckin</u>, 974 F.2d at 1060.  The
18 Supreme Court has refused to apply a solely objective test for deliberate
19 indifference.  <u>See</u> <u>Farmer</u>, 511 U.S. at 837.  Instead, the Court has found that
20 deliberate indifference exists where "the official knows of and disregards an
21 excessive risk to inmate health or safety; the official must both be aware of facts
22 from which the inference could be drawn that a substantial risk of serious harm
23 exists, and he must also draw the inference."  <u>Id</u>.

24

25                        **III.  DISCUSSION**
26 **A.      Plaintiff Has Adequately Stated a Claim for Deliberate Indifference.**
27         This Court considers Plaintiff's allegations in the Second Amended
28 Complaint, the Attachment to the Second Amended Complaint, and the medical

-10-

1   records attached in ruling on Defendants' Motion to Dismiss.  <u>See</u> <u>Swartz</u>, 476

2   F.3d at 763; <u>Lee</u>, 250 F.3d at 688-689.  This Court finds that Plaintiff has stated

3   sufficient facts to support a claim that Defendants were deliberately indifferent to

4   Plaintiff's serious shoulder injury and deliberately refused for more than a year to

5   order an MRI which would have revealed the extent of Plaintiff's shoulder injury

6   and the need for surgery.

7        Plaintiff states that he complained of unremitting shoulder pain, and an

8   MRI taken 17 months after Plaintiff's initial complaints revealed a torn rotator

9   cuff that warranted surgery.  Thus, Plaintiff had a serious medical need that could

10  lead to further injury and the unnecessary and wanton infliction of pain. <u>See</u> <u>Jett</u>,

11  439 F.3d at 1096.

12       Plaintiff also alleges that Defendants Fernando and Pollock were aware of

13  Plaintiff's complaints and purposefully failed to act.  Plaintiff further alleges that

14  in the months between his initial treatment and the eventual MRI which revealed

15  Plaintiff's torn rotator cuff, Plaintiff's daily functioning capacity was impaired and

16  Plaintiff was in pain.  Thus, Plaintiff alleges that Defendants purposefully failed to

17  act, and that Plaintiff was harmed by Defendants' deliberate indifference.

18       Plaintiff also alleges that the delay in receiving an MRI, for a period of well

19  over a year, caused further harm, since Plaintiff continued to experience pain and

20  diminished function during that time, and since the continued use of pain

21  medication caused Plaintiff stomach problems while allegedly doing nothing to

22  alleviate his pain or improve his shoulder condition or functioning ability.

23       While Plaintiff's allegations that Defendants did not follow "customary

24  diagnostic procedures" appear to be unavailing – since they allege only negligence

25  or medical malpractice – Defendants' repeated refusal to consider any further

26  diagnostic tests for well over a year constitutes some evidence of deliberate

27  indifference.

28       While factual issues remain concerning, <u>inter alia</u>, the extent and nature of

-11-

1  Plaintiff's treatments over the 17 months while he waited for an MRI, and the

2  truth of Plaintiff's allegations regarding Defendants' responses to Plaintiff's

3  requests for an MRI and further treatment, Plaintiff has stated sufficient facts to

4  state a claim upon which relief in a <u>Bivens</u> action can be granted.  <u>See</u>, <u>e.g.</u>, <u>Gracia</u>

5  <u>v. Cassim</u>, No. CV 07-5239 FMC (JTL) 2008 WL 2627748, slip op. at *2-5 (C.D.

6  Cal. 2008) (allegations in second amended complaint that defendants denied an

7  order for an MRI scan for 16 months stated facts sufficient to state a claim);

8  <u>Williams v. Kernan</u>, No. C 07-5574 MMC (PR), 2008 WL 1776998, slip op. at

9  *1 (N.D. Cal. 2008) (allegations that defendants refused to provide plaintiff with

10  an MRI over 20-month period stated facts sufficient to state a claim).

11        Accordingly, Defendants' Motion to Dismiss pursuant to Fed. R. Civ.

12  P. 12(b)(6) is denied.

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

## ORDER

For all of the foregoing reasons, **IT IS HEREBY ORDERED AS FOLLOWS:**

    1.    Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint is **DENIED**; and

    2.    Defendants are ordered to file an Answer to Plaintiff's Second Amended Complaint **within twenty-one (21) days** of the date of this Order.

**IT IS FURTHER ORDERED** that the Clerk shall serve forthwith a copy of this Memorandum and Order on all parties.

**IT IS SO ORDERED.**

DATED: September 3, 2008

_____/s/_____
JEFFREY W. JOHNSON
United States Magistrate Judge

-13-